Citation Nr: 21049966
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 18-05 048
DATE: August 13, 2021

ORDER

A total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is granted from February 22, 2017.

REMANDED

Entitlement to service connection for a left elbow disorder is remanded.

Entitlement to service connection for bilateral pes planus with bunionectomies and residual pain is remanded.

Entitlement to service connection for sleep apnea is remanded.

Entitlement to an initial rating greater than 50 percent for posttraumatic stress disorder (PTSD) is remanded.

Entitlement to increased ratings for lumbosacral strain with degenerative arthritis, intervertebral disc syndrome, and vertebral fracture, currently evaluated as 20 percent disabling from August 31, 2016, to February 22, 2017, and 40 percent thereafter, is remanded.

Entitlement to a TDIU for the period prior to February 22, 2017 is remanded.

FINDING OF FACT

From February 22, 2017, the Veteran's service-connected disabilities precluded him from securing or following a substantially gainful occupation.

CONCLUSION OF LAW

From February 22, 2017, the criteria for entitlement to a TDIU have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.16.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the United States Navy from September 1979 to April 1982.

He testified during a March 2021 virtual hearing. A transcript of this proceeding has been associated with the record.

Of note, the Veteran's March 2017 Notice of Disagreement (NOD) included the issue of entitlement to an earlier effective date for the award of service connection for a lower back disability. On the same day that an October 2017 Statement of the Case (SOC) was issued, the Veteran's representative contacted VA and withdrew this matter. The issue was not raised on the Veteran's December 2017 VA Form 9, or subsequently certified to the Board. Accordingly, this matter is not on appeal.

TDIU

The Veteran is currently pursuing entitlement to a TDIU. 

This appeal stems from an August 2016 claim for benefits.

Generally, VA will grant a TDIU when the evidence shows that the veteran is precluded, by reason of service-connected disabilities, from obtaining and maintaining any form of gainful employment consistent with his or her education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16. The central inquiry in a TDIU claim is whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability. Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

A total disability rating for compensation may be assigned when the veteran receives less than a total disability rating (less than 100 percent) and is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. Regulations provide that if a veteran is service-connected for one disability, it must be rated as 60 percent disabling or more. If a veteran is service-connected for two or more disabilities, at least one disability must be rated at 40 percent or more, and sufficient additional disability must bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16.

In making this determination, the following will be considered one disability: 

(1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable;

(2) disabilities resulting from common etiology or a single accident; 

(3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric; 

(4) multiple injuries incurred in action; or 

(5) multiple disabilities incurred as a prisoner of war. 

38 C.F.R. § 4.16(a). 

From August 31, 2016, to February 22, 2017, the Veteran is in receipt of distinct 20 percent ratings for his lower back and left sciatic nerve disabilities (in addition to a 10 percent rating for tinnitus). These disabilities arise from a common etiology (as the Veteran's radiculopathy is secondary to his lower back disability), such that they constitute "one disability" within the meaning of VA regulations. Even with that consideration, however, the Veteran does not meet the schedular threshold for this period, as his single disability is not rated at 60 percent or higher. 

Beginning February 22, 2017, however, the Veteran's combined rating is 80 percent, and he has at least one disability rated at 40 percent or higher. The schedular criteria are met from this point forward, and the Board may consider this issue at this time.

On his November 2017 VA Form 21-8940, the Veteran reported a four-year college education and a Master's degree in engineering. From 2004 to 2013, he was employed by Universal Studios as an audio visual (A/V) engineer. During this time, he estimated one year of time lost due to illness. Additional training or education following the time when the Veteran became too disabled to work was denied.

The Veteran's former employer has provided three VA Forms 21-4192 for consideration. See VA Forms 21-4192 dated January 2018, January 2018 (2), and March 2018. Each form confirms that the Veteran was employed through November 2013 as a A/V engineer, and that his employment status was terminated due to layoffs. On one of the forms, it is also noted that the Veteran took a leave of absence from October 2011 to June 2012, without further explanation.

Following his 2013 termination, the Veteran maintains that he was too disabled to work due to his service-connected disabilities.

During the period on appeal, the impact of the Veteran's service-connected disabilities on his occupational functioning was assessed by multiple VA examiners. Notably, a December 2016 VA examiner found that the Veteran's back disability impacted his capacity to engage in repetitive bending, lifting weights over 20 pounds, stooping, squatting, or prolonged standing/walking. A similar disability picture was endorsed by a January 2018 examiner, who maintained that the Veteran's back disability limited his walking to two hours, and sitting to six hours, with intermittent breaks required throughout an eight-hour workday.

With respect to the Veteran's tinnitus, an March 2017 examiner articulated that the condition caused sleep impairment. Moreover, the Veteran had previously been employed as a sound engineer, and the tinnitus affected his "listening judgment."

Turning to the Veteran's psychiatric disability, a September 2017 examiner found that his symptoms caused occupational and social impairment with deficiencies in most areas. He was currently homeless and employment was not reported. Rather, the Veteran's examiner classified his disability as "severe . . . [which] renders him unemployable." 

A less severe disability picture was depicted during February 2018 VA psychiatric examination, during which it was found that the Veteran's disability produced occupational and social impairment due to mild or transient symptoms which were not severe enough to interfere with occupational and social function or to require continuous medication. During evaluation, the Veteran reported that his prior employment was terminated because he was injured at work and laid off, and that "they didn't like my attitude [and I] was having problems emotionally."

The Veteran also offered competent testimony as to the impact of his service-connected disabilities on his occupational functioning during the March 2021 hearing. Layno v. Brown, 6 Vet. App. 465, 469 (1994). At that time, he confirmed that he had not been employed since 2013, at which time his back pain was so severe that he felt incapacitated. He was largely restricted to a chair and demonstrated such limited range of motion that he was unable to lean forward, for example, to tie his shoes. 

Additional occupational limitations were attributed to the Veteran's psychiatric disability, including anger outbursts and difficulty associating with coworkers and supervisors. Impaired concentration and recall were also reported, such that the Veteran struggled to complete extended tasks. According to the Veteran's representative, he also showed near-continuous mood disturbances, memory loss, and impaired judgment, such that employers might not feel comfortable that the Veteran would not hurt himself or others in the workplace.

The remaining evidence, including VA treatment records, do not contradict the examiners' findings to any substantial degree. Rather, this evidence memorializes the Veteran's ongoing symptoms of chronic and radiating lower back pain productive of limitation of motion. Moderate psychiatric disturbances, primarily reported as chronic sleep impairment, are also documented. 

With respect to the available body of evidence, the Board acknowledges that there is absent evidence which may contribute to a more complete understanding of the Veteran's occupational functioning, including Social Security Administration (SSA) records or an extraschedular memorandum from VA's Director of Compensation Services. See 38 C.F.R. § 4.16(b). However, the Board finds that a grant of this appeal is warranted on the existing evidence of record, such that remand for this additional purpose would serve only to unduly delay in the adjudication of this appeal.

Rather, it is apparent that the Veteran's service-connected disabilities precluded his substantial and gainful employment throughout the period on appeal. 

In offering this finding, the Board acknowledges that the Veteran possesses a graduate-level education and maintained meaningful employment as an A/V engineer until 2013. However, it is also shown that the Veteran required significant time off from work until his employment status was terminated, including an extended leave of absence from October 2011 to June 2012. Although the Veteran's former employer did not identify the cause of such absence, the Veteran has directly attributed one year of time lost to his service-connected disabilities.

Such a finding is supported by the competent evaluations of multiple VA examiners during the period on appeal. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000); see also Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008). Collectively, this evidence establishes that the Veteran's lower back and sciatic nerve disabilities cause significant and chronic pain, which greatly limit his range of motion or ability to work a standard eight-hour workday without the need for intermittent breaks. The Veteran's psychiatric disability is also productive of chronic mood disturbances and anger outbursts, which have historically caused problems in the workplace and, according to his representative, would serve as a bar to future employment given related safety concerns. Historically, these symptoms have also caused such functional impairment as to render the Veteran homeless for periods of time. Compellingly, the Veteran has also solely been trained and employed as an A/V engineer, such that his tinnitus directly impacts the reliability of his work in the field, with no known accommodations identified. 

In sum, the Veteran shows such physical and mental limitations that he is unable to secure and maintain substantial and gainful employment in his chosen field. There are no competent opinions of record which tend to undermine this finding; rather, the Veteran has offered competent testimony that he is no longer able to function in his profession. 

In affording the Veteran the benefit of the doubt, his service-connected disabilities are found to have rendered him unable to secure or follow a substantially gainful occupation, and a TDIU is hereby granted, effective February 22, 2017. 

REASONS FOR REMAND

Although the Board sincerely regrets the additional delay this will cause, further development is necessary prior to the adjudication of the remaining appeals.

First, there are outstanding records which must be obtained. During the March 2021 hearing, the Veteran reported that he was in receipt of SSA disability benefits, and had received private medical treatment for the claimed elbow and feet disorders. As these records have not yet been requested or otherwise obtained, a remand for this purpose is required. 

Also during the March 2021 hearing, the Veteran reported a worsening of his service-connected psychiatric and back disabilities since his most recent VA examinations. See January 2018 VA back examination; February 2018 VA psychiatric examination; March 2021 hearing transcript (indicating that the Veteran is now largely confined to a chair due to his back disability and that the prior examinations did not fully capture the scope of his back and psychiatric symptoms). New examinations are needed to assess the current severity of these disabilities. 

Next, the Veteran has not yet been afforded VA examination for the claimed sleep apnea condition. However, there is competent evidence of a current disorder with a possible secondary nexus to the Veteran's service-connected PTSD or tinnitus. See, e.g., VA treatment records (documenting current sleep apnea); February 2018 VA psychiatric examination (documenting chronic sleep impairment as a current symptom); March 2017 VA audiological examination (recording sleep impairment due to the Veteran's tinnitus). Thus, an examination is warranted on this basis. See McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006).

As to the Veteran's claim for a TDIU, the Board has granted this claim from February 22, 2017. Prior to that point, the Veteran did not meet the schedular criteria, and the Board may not grant an extraschedular TDIU in the first instance.

Nonetheless, "[i]t is the established policy of the Department of Veterans Affairs that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled." 38 C.F.R. § 4.16(b). While the Board does not make an explicit finding of unemployability during this period at this time, the evidence at the least suggests that such a finding may be possible. Accordingly, this issue will be remanded for extraschedular consideration.

Finally, the Board acknowledges that the Veteran has also not undergone VA examinations for the claimed left elbow and feet disorders. However, the Board does not find a competent basis to request such examinations at this time. Id.

The matters are REMANDED for the following actions:

1. Obtain any medical records of the Veteran's in the care of the SSA which are relevant to the pending claims, and associate them with the claims file.

2. Contact the Veteran and request that he identify all private providers of medical treatment for his claimed disabilities since service, including for the left elbow and feet disorders. 

Then request that the Veteran provide authorization for release of all identified private medical records to VA. All actions to obtain the requested records should be fully documented in the record. The RO must make two attempts to obtain any private records identified, unless the first attempt demonstrates that further attempts would be futile.

If private records are identified, but not obtained, the RO must notify the Veteran of (1) the identity of the records sought, (2) the steps taken to obtain them, (3) that the claim will be adjudicated based on the evidence available, and (4) that if the records are later obtained, the claim may be readjudicated.

If possible, the Veteran should attempt to obtain the records himself.

3. Schedule the Veteran for an examination to assess the etiology of his claimed sleep apnea. The claims file and a copy of this remand must be made available for review.

In particular, the examiner is asked to provide the following opinion:

(a) Is it at least as likely as not (50 percent probability or more) that the condition was caused or aggravated by the Veteran's service-connected PTSD or tinnitus, or the treatment thereof?

In formulating the opinion, the examiner is advised that the term "at least as likely as not" does not mean "within the realm of possibility." Rather, it means that the weight of the medical evidence for and against the claim is so evenly divided that it is as medically sound to find in favor of the claim as it is to find against it.

A complete rationale should be provided for all opinions or conclusions expressed. It should be noted that the Veteran was competent to attest to observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation. 

4. Schedule the Veteran for VA examinations to assess the current severity of his service-connected back and psychiatric disabilities. The claims folder must be provided to the examiner in conjunction with the examination. All necessary tests and studies should be conducted.

The examiners should offer an assessment of all pertinent symptomatology and findings, to be reported in detail in accordance with Diagnostic Codes 5243 (back) and 9411 (psychiatric).

5. Submit the Veteran's claim for an extraschedular TDIU to the Director, Compensation Service. 

 

 

Evan M. Deichert

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board K. Kovarovic, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.